# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-CR-58-TLS |
| | ) | |
| JOHNNIE C. COLLINS | ) | |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion to Suppress [ECF No. 19], filed on September 29, 2011. The Fourth Amendment issues raised by the Defendant's Motion are whether the police officer who stopped the Defendant had probable cause to do so, and in the subsequent pursuit of the Defendant whether police officers' alleged unlawful force requires suppression of the evidence seized. Because the Court concludes that there was probable cause for the initial stop, and that even if the Defendant's allegations of unlawful force were substantiated, suppression of the evidence seized would not be appropriate under Seventh Circuit precedent, the Motion to Suppress will be denied.

## BACKGROUND

On August 24, 2011, the Government filed a two-count sealed Indictment [ECF No. 1] charging the Defendant, Johnnie C. Collins, with knowingly and intentionally possessing with the intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1), and knowingly and intentionally possessing with the intent to distribute cocaine also in violation of 21 U.S.C. § 841(a)(1). The Defendant was arrested on August 29, 2011 [ECF No. 10], and arraigned on September 13, 2011 [ECF No. 16], at which time he pled not guilty to both counts of the Indictment. On September 29, 2011, the Defendant filed his Motion to Suppress [ECF No. 19]

regarding the crack cocaine, the powder cocaine, $340 in United States currency, and a $20 counterfeit bill.[1] On October 13, 2011, the Government filed its Response to Defendant's Motion to Suppress [ECF No. 21] arguing that probable cause existed for the Defendant's arrest, that retrieval of the drugs was not the product of a search at all since the Defendant threw them away from his person, and that the currency was obtained as part of a proper search incident to arrest.

On November 18, 2011, the Court conducted an evidentiary hearing on the Motion to Suppress. The Defendant and his counsel, Donald C. Swanson, Jr., were present. Assistant United States Attorney Lesley Miller Lowery represented the Government. The Court heard witness testimony and reviewed submitted exhibits. At the conclusion of the hearing, the Court took the Motion under advisement and gave the parties additional time to file briefs. On February 2, 2012, the Defendant filed his Brief in Support of Defendant's Motion to Suppress Evidence [ECF No. 30]. On March 20, the Government filed its Response [ECF No. 31], and on April 6, the Defendant filed his Reply [ECF No. 32].

**STATEMENT OF FACTS**

The events that are the subject of this Motion to Suppress took place in the southeast quadrant of Fort Wayne, Indiana. What follows is a summary of the evidence presented at the November 18, 2011, evidentiary hearing.

On June 29, 2011, Fort Wayne Police Officer Stephen Ealing was working the B shift—2:00 p.m. to 10:30 p.m.—in the southeast quadrant of Fort Wayne. (Hr'g Tr. 5, Nov. 18,

---

[1] The $20 counterfeit bill is mentioned only in the Defendant's Motion to Suppress. Because the Defendant makes no argument for why it should be suppressed, nor was it even mentioned at the Suppression Hearing, the Motion to Suppress will be denied with respect to the $20 counterfeit bill.

2011, ECF No. 29.) He was in full police uniform and driving a fully marked patrol car. (Tr. 7.) Officer Ealing was accompanied in his squad car by a clergyman, a common practice in the Fort Wayne Police Department. (Tr. 52.) At around 5 p.m., Officer Ealing used his radar gun to clock a red or maroon four-door sedan with a white cloth top going south on Clinton Street at 48 miles per hour in a 35 miles per hour zone. (Tr. 6–7, 20.) Officer Ealing followed the sedan south on Clinton Street and performed a traffic stop at the intersection of Clinton Street and Foster Parkway using his emergency lights and siren. (Tr. 7.) When Officer Ealing turned on his lights and siren, his dashboard camera also began recording. At the November 18, 2011, hearing, Officer Ealing authenticated the video footage from his dashboard camera, which the Government introduced as Government Exhibit 1 and played for the Court. (Tr. 9.)

When Officer Ealing pulled the sedan over, the driver exited the sedan almost immediately. (Tr. 8.) At the November 18, 2011, hearing, Officer Ealing identified the Defendant as the driver of the sedan on June 29. After the Defendant exited the sedan, Officer Ealing got out of his patrol car and ordered the Defendant to get back into the sedan "for officer safety." (Tr. 25.) The Defendant complied by getting back into the sedan, but then drove away from Officer Ealing southbound on Clinton Street. Officer Ealing testified that he had not released the Defendant to go at that point. (Tr. 25.) Officer Ealing got back into his patrol car and pursued the Defendant with lights and siren activated. The Defendant drove into a residential neighborhood and crashed his sedan into a stop sign at the intersection of South Hanna Street and East Sherwood Terrace. (Tr. 19, 41.) At some point during the pursuit, Officer Ealing was advised over the radio by Sergeant Long to terminate the vehicle pursuit. (Tr. 25.)

After crashing into the stop sign, the Defendant exited the sedan and began running in a

3

northeasterly direction. (Tr. 26.) Officer Ealing exited his patrol car and ran after the Defendant. Officer Ealing ordered the Defendant to stop, but the Defendant did not comply. (Tr. 13.) While the Defendant was running, Officer Ealing observed him make an underhanded throwing motion with his hand and observed a white object fly out of the Defendant's hand and land along a fence line next to a small tree or bush. (Tr. 10.) As the Defendant made the throwing motion, he fell to the ground. (Tr. 13.) The Defendant rose as Officer Ealing caught up to him. Officer Ealing held onto the Defendant's arm and applied pepper spray to the Defendant in an attempt to get the Defendant on the ground, but according to Officer Ealing "it didn't have any effect." (Tr. 13.) Officer Ealing also indicated that during this encounter he struck the Defendant in the back of the neck with a closed fist and administered several blows with his elbow to the Defendant's back in an attempt to get the Defendant to the ground, but did not succeed. Further, Officer Ealing indicated the Defendant was swinging at him but his blows did not connect. (Tr. 29–30.)

The Defendant broke away from Officer Ealing and pushed through a fence into the backyard of a house on Weisser Park Avenue. Officer Ealing again caught up with the Defendant, and performed a leg sweep to bring him to the ground. The Defendant stood up and started swinging at Officer Ealing. Officer Ealing grabbed one of his arms and kicked the Defendant about fifteen times in the stomach/groin area. (Tr. 30–31.) Officer Ealing used pepper spray a second time but according to Officer Ealing "it didn't have any effect that second time either." (Tr. 14.)

At this point, Officer Kenneth Johnson, also of the Fort Wayne Police Department, arrived on the scene. He observed the Defendant swinging his arms at Officer Ealing, and chose to deploy his Taser because of the Defendant's active resistance. (Tr. 42–43.) The first Taser

4

charge caused the Defendant to fall to the ground, but he continued to struggle. (Tr. 15, 44.) Therefore, Officer Johnson deployed the Taser a second time, which allowed Officer Ealing and another officer to handcuff the Defendant. (Tr. 15, 44–45.)

The audio from Officer Ealing's radio indicates he told the Defendant: "I'll fuck you up." (Tr. 32.) Officer Ealing testified he said this in an attempt to get the Defendant to comply with his orders. The Defendant weighs approximately 250 pounds and Officer Ealing weighs approximately 165 pounds. (Tr. 34–35, 45.) Additionally, Officer Ealing testified that once the Defendant was detained, he was arrested for resisting law enforcement, fleeing in a vehicle, and resisting law enforcement physically. (Tr. 16.) After detaining the Defendant, Officer Ealing retrieved the white object he had seen emit from the Defendant's hand. It was a bag containing white substances. He gave it to the narcotics unit Officer Mark Deshaies, who field tested the substances. (Tr. 16.) The bag contained 44.8 grams of a solid substance later identified as crack cocaine and 28.8 grams of a powdered substance later identified as powder cocaine, both of which field tested positive for cocaine. (Tr. 17–19.) Officer Ealing also testified that the Defendant was searched as part of the arrest, and $340 in cash was retrieved from his pants pocket. (Tr. 16.)

The Defendant argues that his detention and arrest were without probable cause, and that Officers Ealing and Johnson used unreasonable force in violation of his rights under the Fourth Amendment. Consequently, the Defendant argues, the search resulting in the discovery of the crack cocaine, the powder cocaine, and the $340 was an illegal search, and under the reasoning of *United States v. Ankeny*, 502 F.3d 829, 836 (9th Cir. 2007), he urges that the evidence so obtained must be suppressed. The Government argues: 1) the force used against the Defendant

was not unreasonable or excessive in light of his continued resistance; 2) the Defendant was not under arrest at the time he threw the bag containing cocaine and therefore the later retrieval of that evidence did not constitute a search at all; 3) the Defendant abandoned the bag of cocaine and therefore has no Fourth Amendment interest in it; and 4), even if the search had been illegal, the cocaine would have been inevitably discovered as part of the Defendant's lawful arrest for resisting law enforcement and is therefore admissible. The Defendant responds that in light of the totality of the circumstances, the force used against the Defendant was excessive, and, citing *United States v. Watson*, 558 F.3d 702 (7th Cir. 2009), argues that the evidence should be suppressed and the case against him dismissed.[2]

**CONCLUSIONS OF LAW**

The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When police officers stop an automobile and detain the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809–10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. Any ulterior motive an officer may have for making the stop is irrelevant. *United States v. Bass*, 325 F.3d 847, 850 (7th Cir. 2003) (citing *Whren*, 517 U.S. at 813).

The Defendant's initial Motion to Suppress alleges that "[t]he detention, arrest and

---

[2]The Government's Response neither cites to nor discusses *Ankeny* or *Watson*.

seizure of Defendant was without probable cause." (Mot. Suppress 1, ECF No. 19.) However, although the Defendant's Brief in Support references the Fourth Amendment, his argument does not appear to involve probable cause and instead focuses on what he believes was the application of excessive and unreasonable force.

The facts before the Court indicate that Officer Ealing initiated a traffic stop because the Defendant was driving 48 miles per hour in a 35 miles per hour zone. This establishes probable cause for the initial traffic stop. *Whren*, 517 U.S. at 810 ("the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). Furthermore, the facts before the Court, including the dashboard camera footage, show that the Defendant fled from the initial traffic stop. When the Defendant fled from Officer Ealing without being released, Officer Ealing reasonably believed the Defendant was committing the offense of felony resisting law enforcement. *See* Ind. Code § 35-44-3-3(b)(1)(A). This establishes probable cause for Officer Ealing's pursuit of the Defendant. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (probable cause sufficient to justify an arrest "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person . . . in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.").

The Defendant's primary objection to the admission of the evidence against him is his claim that Officers Ealing and Johnson used unreasonable force to effectuate his arrest. The Defendant cites a Ninth Circuit case, *United States v. Ankeny*, for the proposition that a Fourth Amendment excessive force violation requires suppression of the evidence seized. 502 F.3d at 836. However, the Defendant also cites to *United States v. Watson*, where the Seventh Circuit

7

disagreed with the *Ankeny* court. Specifically, the Seventh Circuit declined to apply the *Ankeny* court's reasoning, holding: "We thus disagree with the dictum in *United States v. Ankeny* . . . that the use of excessive force in the course of a search can require suppression of the evidence seized." 558 F.3d at 705. Rather, if a defendant proves excessive force, "his remedy would be a suit for damages under 42 U.S.C. § 1983 (or state law) rather than the exclusion from his criminal trial of evidence that had been seized in an otherwise lawful search." *Id.* at 704. Therefore, under a plain reading of *Watson*, suppression would not be appropriate even if the Defendant could establish that Officers Ealing and Johnson used excessive force against him. Rather, the Defendant's appropriate remedy would be a § 1983 civil suit against the Officers for use of excessive force.

The Court notes that even under *Ankeny*, suppression would not be appropriate in this case. The *Ankeny* court held that it did not need to determine whether unreasonable force had been used because there was no "causal nexus" between the allegedly unreasonable force and discovery of the evidence. *Ankeny*, 502 F.3d at 837; *see also Watson*, 558 F.3d at 702 ("There was no causal connection . . . between the alleged police misconduct and the obtaining of the evidence."). The bag containing cocaine was obtained not because of any allegedly unreasonable force used by the Officers, but because the Defendant threw it away from his person before Officer Ealing used any force. As the Government urges, "[a]n arrest does not occur until a police officer lays hands on a subject or the subject voluntarily submits to a show of authority." *United States v. Britton*, 335 Fed. Appx. 571, 575 (6th Cir. 2009); *California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("An arrest requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority."). The exclusionary rule is only triggered where

8

evidence is obtained "following an unlawful arrest." *United States v. Howard*, 621 F.3d 433, 451 (6th Cir. 2010). Because the facts indicate that the Defendant threw the bag away from his person before Officer Ealing touched him, the bag was not obtained "following" an arrest at all, and so there can be no nexus between the alleged unreasonable force and finding the bag. For that matter, it appears that the Defendant placed the bag in a publicly exposed place, suggesting that the Government's retrieval of the bag did not constitute a search at all within the meaning of the Fourth Amendment. *See United States v. Eubanks*, 876 F.2d 1514, 1516 (11th Cir. 1989) ("[U]nder the fourth amendment no governmental 'search' occurs if the place or object examined is publicly exposed such that no person can reasonably have an expectation of privacy.").[3]

Further, the $340 found on the Defendant's person would have been obtained as part of a search incident to arrest for his flight from the traffic stop whether or not Officers Ealing and Johnson had used any force against the Defendant at all. Thus there is no nexus between the alleged unreasonable force and finding the currency.

Because the Defendant's appropriate remedy for the conduct he claims is excessive force would be a civil action under 42 U.S.C. § 1983, and because there is no causal connection between the alleged excessive force and the obtaining of the evidence against the Defendant, suppression is inappropriate, and it would be improper for the Court to reach the question of

---

[3]Because the Court concludes that there was no nexus between the finding of the bag and any allegedly unreasonable force, that the Defendant threw the bag before an arrest began, and that the Defendant placed the bag in a public place with no reasonable expectation of privacy, the Court need not determine whether the Defendant also abandoned the bag within the framework set out by the Seventh Circuit in *United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000) ("To demonstrate abandonment, the government must establish by a preponderance of the evidence that the defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized.").

whether Officers Ealing and Johnson used excessive force against the Defendant.

## CONCLUSION AND ORDER

For the foregoing reasons, the Defendant's Motion to Suppress [ECF No. 19] is DENIED. The Court SETS a telephonic status conference for May 10, 2012, at 10:30 AM before Judge Theresa L. Springmann for the purpose of scheduling this case for trial. The Court will initiate the call.

SO ORDERED on May 4, 2012.

      s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT